UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FADUMA AWEIS HASSAN,

    Plaintiff,                                    Civil Action No. 07-12812

v.                                              HON. JOHN CORBETT O'MEARA
                                                 U.S. District Judge
                                                 HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Faduma Aweis Hassan brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)[1]. I recommend that Defendant's Motion for Summary

---

[1] Plaintiff, proceeding *pro se*, filed a letter disputing the administrative decision. [Docket #22]. Because the Plaintiff is unrepresented, her pleadings and arguments will not be held to the standard of a practicing attorney, but will be given a liberal construction. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice"). Accordingly, the Court will consider her narrative letter [Docket #22], as well as the arguments and other information in her complaint in evaluating her case.

Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded for fact-finding and reconsideration consistent with this recommendation.

## PROCEDURAL HISTORY

On April 19, 2002, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging an onset date of July 1, 1997 (Tr. 51). After the initial denial of benefits, she made a timely request for an administrative hearing, held on March 5, 2004 in Flint, Michigan (Tr. 346). Administrative Law Judge ("ALJ") Ben S. Engelman presided (Tr. 346). Plaintiff, unrepresented, testified, as did vocational expert ("VE") Mary Williams (Tr. 351-355, 362-363, 355-361). On August 19, 2004, ALJ Engelman found that Plaintiff retained the ability to perform a significant number of unskilled, exertionally light jobs (Tr. 185). On April 21, 2005, the Appeals Council, noting that the August 2004 decision did not address treatment records suggesting that Plaintiff experienced depression, remanded the case to ALJ Engelman with directions to evaluate her mental impairments (Tr. 191-192). A rehearing was held on October 20, 2005. Plaintiff, represented by counsel, testified, as did VE Pauline McEachin (Tr. 367-375, 376-381). On March 4, 2006, the ALJ issued a decision, again finding that Plaintiff was capable of a significant range of light work (Tr. 31). On May 25, 2007, the Appeals Council denied review (Tr. 6-8). Plaintiff filed suit in this Court on July 5, 2007.

## BACKGROUND FACTS

Plaintiff, born January 1, 1970, was age 34 when the ALJ issued his more recent

decision (Tr. 51). She worked previously as a babysitter (Tr. 61, 66). Plaintiff's application for benefits alleges disability due to back pain and asthma (Tr. 60).

### A. Plaintiff's Testimony

#### 1. March 5, 2004 Hearing

Plaintiff, unrepresented, testified that she was born in Somalia and attended school for 12 years (Tr. 351). The mother of four children, Plaintiff reported that she had recently miscarried (Tr. 352). She alleged disability as a result of back pain and asthma (Tr. 352). She stated that she currently took Flonase, Elavil, and Prozac (Tr. 353). Plaintiff admitted performing household tasks "most of the time," with the help of family members (Tr. 355). She testified that in addition to asthma and back pain, she experienced leg swelling (Tr. 354).

#### 2. October 20, 2005 Hearing

Plaintiff testified that she had been unable to perform household chores for the past 14 years as a result of asthma, migraine headaches, and kidney problems (Tr. 367). She indicated that even when taking Imitrex for migraine headaches, she experienced level four pain on a scale of one to 10 (Tr. 369). She stated that back pain prevented her from sitting for more than 30 minutes at a time, adding that she lay on her side to relieve discomfort (Tr. 369). Plaintiff reported that she also took Coumadin for circulation problems, which could be combined with Tylenol 3 but not Motrin (Tr. 369, 370).

Plaintiff alleged that she spent most of her day lying down (Tr. 371). She indicated that she had recently been prescribed Nortriptyline for bedtime use (Tr. 372-373). Plaintiff denied mental health treatment or depression (Tr. 373). She testified that Prozac, which she

took previously, failed to address her sleeping problems[2] (Tr. 374).

>  **B.     Medical Evidence**

>  **1. Treating Sources[3]**

In March 2002, chiropractor Kal Abouhaif noted that Plaintiff reported level "9" pain on a scale of one to 10 as well as fatigue, weakness, fever, sleep difficulties, and headaches (Tr. 105-106). A radiographic evaluation showed narrowed disc spacing at L4/L5 and S5/S1 but otherwise normal results (Tr. 110-111). An orthopedic examination found that her cervical spine ranges of motion ("ROMs") were mildly restricted and thoracolumbar ROMs were severely restricted (Tr. 108-109). Plaintiff was advised to exercise and undergo mechanical traction, moist heat therapy, and massage (Tr. 109). The same month, Dr. Abouhaif noted the presence of "malposition" of the right lower lumbar range and the left sacral range with "[e]vidence of spasm and tenderness in the left pelvic range (Tr. 104). At the end of the month, Dr. Abouhaif noted a ten percent "enhancement in mobility" (Tr. 102). April 2002 treating notes indicate that Plaintiff tolerated massage treatment well (Tr. 100). Later the same month, Plaintiff reported a worsening of her condition after taking a fall at home (Tr. 97). In October 2002, imaging studies of Plaintiff's lumbar spine showed mild

---

[2]The ALJ, noting that the Appeals Council had remanded the case for development of possible mental conditions, found that because Plaintiff denied depression and treating sources had refrained from referring her for mental evaluations, a consultive mental examination was inappropriate (Tr. 375).

[3]Treatment records concerning Plaintiff's pregnancies and other conditions unrelated to her disability claim are omitted from discussion.

degenerative disc changes (Tr. 166). In December 2002, Michael W. Mulholland, M.D., Ph.D., scheduled Plaintiff for a laparoscopic cholecystectomy after she reported right upper abdominal pain (Tr. 335).

In January 2003, Anne G. Hartigan, M.D., "question[ed] whether there is a psychosocial component to the patient's pain presentation as it appears to be almost complete body pain" (Tr. 149). In March 2003, echocardiography showed normal results (Tr. 170). An MRI performed the following month also showed normal results (Tr. 167). The same month, Vladimir Ognenovski, M.D., noted that Plaintiff had failed "to establish any working relationship with the pain psychologist" (Tr. 153). In April 2003, Dr. Ognenovski, noting Plaintiff's unremarkable imaging studies, opined that her lower back pain was "likely exacerbated by deconditioning as well as obesity" (Tr. 158). He recommended physical therapy and weight loss, noting that she had not "followed through" with previous recommendations (Tr. 158). Plaintiff denied depression (Tr. 157). December 2003 imaging studies of the knees and hips found "early osteophytic changes," but "no significant interval hip joint space narrowing" (Tr. 137).

In January 2004, Ellen Mozurkewich, M.D., noted that Plaintiff had experienced multiple miscarriages (Tr. 321-322). In April 2004, Plaintiff completed a questionnaire for the University of Michigan's "Spine Program," indicating that her back pain was worsened by lying on her back, bending, sneezing, coughing, walking, or sitting for more than 15 minutes (Tr. 220). She reported sleeping problems as a result of pain, stating further that she was unable to walk for more than 15 minutes (Tr. 222). Plaintiff reported pain upon

chewing, coughing, and sneezing as well as low energy and a loss of interest in previously enjoyable activities (Tr. 224). Plaintiff alleged an almost complete inability to engage in household chores, occupational responsibilities, or recreational, social or sexual activities, but acknowledged that she continued to care for her own personal needs (Tr. 226). Plaintiff characterized herself as "moderately anxious or depressed" (Tr. 228).

In June 2004, Plaintiff sought emergency treatment for breathing difficulties and a low-grade fever (Tr. 267). She received a nebulizer treatment resulting in "near-total resolution of her symptoms" (Tr. 267). In August 2004, Plaintiff, 27 weeks into a pregnancy, was diagnosed with gestational diabetes and prescribed insulin (Tr. 258, 261). The following month, she again sought emergency treatment for shortness of breath and in October 2004 was evaluated after passing out at home (Tr. 249, 258). Plaintiff, interviewed by a social worker, denied depression, also reporting strong support from her husband and extended family (Tr. 247).

In August 2005, John A. Yarjanian, D.O., recommended physical therapy for Plaintiff's continued reports of low back pain, noting that "[t]here is questionably a component of pain behavior noted throughout the regions of her body[] which are not well localized . . . . consistent with . . . myofascial pain" (Tr. 319). The same month, Plaintiff, re-prescribed asthma medicine, also reported urinary incontinence and continued back pain (Tr. 304). In October 2005, Megan Eagle, RN, in conjunction with Lourdes Velez, M.D., completed a functional limitations assessment, finding that Plaintiff experienced low back pain with radicular symptoms and "diffuse myalgias . . . consistent with fibromyalgia

syndrome" (Tr. 336). Eagle also noted treatment for migraine headaches, a pulmonary embolism, and chronic asthma, giving Plaintiff a "fair" prognosis (Tr. 336). Finding that Plaintiff's migraine headaches caused memory loss, Eagle deemed her incapable of even "'low stress'" work (Tr. 337). Eagle found that Plaintiff could lift a maximum of five pounds; stand or walk for a total of two hours, and sit for two hours in an eight-hour workday, adding that she required an "at will" sit/stand option (Tr. 338). Eagle also found that Plaintiff would be required to take unscheduled 30 minute breaks four to six times each workday and was precluded from all balancing, crouching, kneeling, and crawling (Tr. 339). Plaintiff was limited to occasional reaching, gripping, handling, feeling, pushing, and pulling (Tr. 340). Eagle found that Plaintiff should avoid all heights, moving machinery, dust, noise, fumes, and humidity, concluding that Plaintiff would be absent from work as a result of her impairments at least four times each month (Tr. 340).

### 2. Consultive and Non-Examining Source

In June 2002, Amish Patel, D.O., conducted a consultive physical examination of Plaintiff (Tr. 92-96). Plaintiff reported that she took Flovent inhalers, Albuterol inhalers and Albuterol in a nebulizer on an "as needed" basis (Tr. 92). She also alleged a five year history of lower back discomfort, more recently accompanied by heel pain and right arm numbness (Tr. 92). She stated that currently took Celebrex and Tylenol #3 (Tr. 92). Plaintiff, 202 pounds, exhibited a "mild right limp," but did not use an assistive device (Tr. 93). She demonstrated a limited range of cervical, dorsolumbar, shoulder, and hip motion, but "full dexterity" in both hands (Tr. 93-94).

In July 2002, a Physical Residual Functional Capacity Assessment performed on behalf of the SSA found Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand, sit, or walk six hours in an eight-hour workday, and the unlimited ability to push or pull (Tr. 118). The report found the absence of postural, manipulative, visual, communicative, or environmental limitations (Tr. 121). The Assessment concluded that Plaintiff's claim that she was unable to sit or stand for more than 30 minutes "not credible" based on her admitted ability to walk up to half a mile, shop, cook, and care for her children (Tr. 122).

### 3. Records Submitted After the March 4, 2006 Administrative Decision[4]

In July 2006, Plaintiff submitted a letter to the Appeals Council alleging that she "had depression for about four years," but had only that month received a diagnosis, asking for additional time to provide evidence of her condition (Tr. 13). She stated further that the day before writing the letter, she had been taken by ambulance to the hospital after fainting, at which time she requested a mental health consultation (Tr. 13). Emergency room treating notes indicate that a medical evaluation found no acute medical problems, but that Plaintiff was referred for a psychiatric evaluation upon alleging long-term depression. *Complaint* at 18 of 23. Plaintiff reported a decreased appetite, panic attacks, and seeing shadows. *Id.* The evaluator noted the absence of past psychiatric diagnoses despite an "extensive past medical history list including a pulmonary embolism," rheumatic fever, cholecystectomy,

---

[4]These records include Appeals Council submissions as well as medical records attached to the Complaint.

migraines, nephrolithiasis, carpal tunnel syndrome, miscarriages, back pain 'with a normal MRI,' gestational diabetes, hypertension, and "possible fibromyalgia." *Id.* at 18-19. Treating notes indicate that Plaintiff was "receptive to establishing treatment" for depression." *Id.* at 19.

Discharge instructions from University of Michigan Hospital's Psychiatric Emergency Service also indicate that Plaintiff requested a reference for treatment of depression (Tr. 342). Records created the following month indicate that Plaintiff was prescribed Trazodone and Effexor (Tr. 345). The Complaint also includes records showing that Plaintiff received treatment for depression and asthma in January, February, March, April, and May 2007.

### C. Vocational Expert Testimony

#### 1. March 5, 2004 Hearing

The ALJ posed the following hypothetical question to VE Mary Williams :

"Let's assume that we have a 34-year-old claimant who does not speak English. Is limited to light work in a clean environment and allows a person to sit or stand during the work day. Because of limited education the jobs would have to be simple. One, two, at most three step jobs. Would there be jobs such a person could perform?"

(Tr. 356). The VE found that given the above limitations, Plaintiff could perform the exertionally light work of inspector (6,000 jobs existing in the lower peninsula of Michigan); small products assembler (2,000), and sorter (800)[5] (Tr. 356, 358-359). The VE testified

---

[5] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50

further that if Plaintiff were limited to sedentary, unskilled work, the number of inspector and assembler positions would be further reduced (Tr. 360-361).

### 2. October 20, 2005 Hearing

The ALJ posed the following question to VE Pauline McEachin:

> "Let's assume that . . . we have a 35-year-old claimant with very limited education even in her native language. The record says 4th grade but can't write more than her name in English, limited to light work with the additional limitations of [the] need to sit and stand during the workday, very limited - - or unable to speak English, limited understanding of English."

(Tr. 376-377). The VE concurred with the previous findings by Mary Williams that Plaintiff could perform the light work of an inspector, assembler, and sorter, adding that because the jobs could be learned through non-verbal demonstration, the inability to speak English was not preclusive (Tr. 377). The VE testified further that if Plaintiff were unable to concentrate for less than 75 percent of the workday as a result of pain and depression, all work would be precluded (Tr. 378). She found further that all work would be precluded by more than one absence per month as a result of migraine headaches or the need to lie down unexpectedly (Tr. 378). She testified that if Plaintiff experienced mild concentrational difficulties and was limited to sedentary work with a sit/stand option, she could perform 5,000 inspector, 8,000 assembly, and 4,000 sorter positions, adding that her job numbers would be halved if Plaintiff were allowed to sit/stand *at will* (Tr. 380).

---

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

### D. The ALJ's Decision

#### 1. August 19, 2004 Decision

Citing Plaintiff's medical records, ALJ Engelman found that Plaintiff experienced the severe impairments of mild degenerative disc disease and asthma, finding nonetheless that they neither met nor equaled any impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 185).

Adopting the VE's light job findings, he found that Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of light work "that provides for an occasional sit/stand option and very minimal use of English language" (Tr. 182, 185). The ALJ rejected Plaintiff's alleged degree of limitation, finding that her claims were "not totally credible," noting the lack of aggressive treatment and Plaintiff's continued ability to care for her children (Tr. 182, 185).

#### 2. March 4, 2006 Decision

ALJ Engelman restated his previous finding that Plaintiff experienced the severe impairments of mild degenerative disc disease and asthma, finding neither condition met nor equaled an impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 27, 31). He noted that although the case had been remanded for further development of Plaintiff's mental limitations as a result of depression, Plaintiff testified that she was not depressed (Tr. 26-27). The ALJ found the absence of limitations as a result of depression (Tr. 24, 26-27). He found that Plaintiff retained the RFC "to perform light work that provides for an occasional sit/stand option and very minimal use of English language" (Tr. 28, 31). Citing

the job numbers of VEs Williams and McEachin, he found that Plaintiff could perform the work of an inspector, assembler, and sorter (Tr. 30).

The ALJ rejected Plaintiff's allegations of disability, again noting that Plaintiff had received only conservative care (Tr. 24). Citing treating records, he noted that "[s]everal attempts were made by telephone and mail to set up pain psychology, physical therapy and occupational therapy visits" but that "no appointments were made" (Tr. 25). He observed that despite advice by the treating physician to enroll in physical therapy, to exercise, and lose weight, "the record does not document that any recommendation was followed" (Tr. 27).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health*

*& Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Plaintiff's Mental Limitations

Plaintiff, proceeding *pro se*, asks the Court to reconsider the ALJ's non-disability

finding on the basis that she continues to experience long-term depression as well as asthma, and back pain. *Complaint* at 1. She also presents 20 pages of treating records dated July 2006 through May 2007 in support of her claim that the ALJ failed to properly evaluate her limitations as a result of depression.

### 1. The March 4, 2006 Decision

First, substantial evidence easily supports the ALJ's March 4, 2006 finding that neither back problems nor asthma rendered Plaintiff disabled. The ALJ noted that Plaintiff admitted in June 2002 that she could walk up to ½ mile without resting, noting further that Plaintiff continued to cook, shop, and socialize with family members (Tr. 28). Citing treating records, he also found that Plaintiff had been treated conservatively for both back and asthma complaints, reasonably finding that her non-compliance with physicians' advice to exercise, enroll in physical therapy, and lose weight undermined her allegations of disability (Tr. 28). He also cited multiple imaging studies showing either normal findings or only mild degenerative changes (Tr. 25, 26 *citing* 137, 166, 167). Likewise, the ALJ permissibly found that the October 2005 findings by Dr. Velez and nurse Eagle suggesting disability were unsupported by objective evidence[6] (Tr. 336-341).

Nonetheless, the March 4, 2006 administrative decision contains error. The ALJ stated at the October 2005 hearing that because Plaintiff denied depression and because none

---

[6]If rejecting a treating physician's opinion, the ALJ must consider, among other factors, "the supportability" of the opinion" and its "consistency of the opinion with the record as a whole" *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004).

-14-

of her treating sources had referred her for a mental evaluation, a consultive mental examination was inappropriate (Tr. 373, 375). The ALJ cited the Appeals Council order that upon remand, "additional evidence may include, '*if warranted and available*, consultative mental status examination,'" opining that further examination was unwarranted (Tr. 375 *citing* 191)(emphasis added).

This is a perfectly fine interpretation of the first paragraph of the Remand order. However, the ALJ ignored the second paragraph of the order which states that upon remand the Administrative Law Judge will:

> "Evaluate the claimant's mental impairment in accordance with the special technique described in 20 C.F.R. 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. 416.920a(c)"

(Tr. 191).

"'When a record contains evidence of a mental impairment that allegedly prevented claimant from working, the Secretary is required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly.'" *Zuckschwerdt v. Commissioner of Social Sec.*, 2008 WL 795772, *6 (E.D.Mich.2008)(Rosen, J.)( *citing Andrade v. Secretary of Health and Human Services,* 985 F.2d 1045, 1048 (10th Cir.1993)(internal citations omitted); 20 C.F.R. § 404.1520a. "The ALJ's determination 'must include a specific finding as to the degree of limitation" regarding Plaintiff's daily living, social, and work functions. 20 C.F.R. § 404.1520a (e)(2). "These findings and conclusions are documented in . . . the Psychiatric Review Technique Form

[("PRT")] that describes the application of the prescribed technique." *Zuckschwerdt* at *6. However, "[t]he failure to complete the [PRT], an adjudicatory tool," by itself, "is not significant." *Clark v. Sullivan*, 1992 WL 296709, *4 (6th Cir. 1992).

Assuming either non-severe impairments or the *complete absence* of any evidence of a mental impairment, the ALJ's failure to comply with the Appeals Council order by completing the PRT analysis, by itself, would be harmless error. However, the ALJ's finding of the absence of mental limitation because ("[n]one of claimant's medical providers have referred claimant for [mental] treatment") is a blatant misinterpretation of the record (Tr. 26).

In January 2003, Dr. Harigan stated that she "question[ed] whether there is a psychosocial component to the patient's pain presentation," stating further that she "referred patient directly to the secretary to schedule for pain psychology intervention . . ." (Tr. 149). Dr. Harigan's accompanying impressions included a "[q]uestion of depression or poor coping" (Tr. 149). In March 2003, Dr. Ognenovski noted the presence of "psychosocial factors," again noting that Plaintiff had been referred to "pain psychology" (Tr. 153). Plaintiff, although denying depression at other times, described herself in April 2004 as "moderately anxious or depressed" (Tr. 228). An October 2005 assessment by Eagle states among other things that Plaintiff was currently taking Prozac for depression (Tr. 337). This evidence alluding to psychological limitations demonstrates a substantive, rather than merely procedural need to complete a mental assessment as directed by the Appeals Council (Tr. 131, 136). *Varley v. Sec. of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Thus, the ALJ erred in

disregarding the Appeals Council's direction to apply the special technique set forth in 20 C.F.R. §416.920a.

**2. Material Submitted After the March 4, 2006 Administrative Decision**

In contrast, none of the material submitted after the last administrative decision provides a basis for a remand. Because Plaintiff requests the consideration of material submitted after the ALJ's decision was issued, this argument is construed as a request for a "Sentence Six" remand. 42 U.S.C. § 405(g). Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ."[7] While the later-submitted material is "new," the records, created in July 2006 and forward, do not pertain to the period before the March 4, 2006 administrative decision and are thus immaterial to this claim. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). If Plaintiff wishes to establish that she experienced a deterioration of her condition or the onset of another illness subsequent to the ALJ's July 2005 decision, the appropriate remedy is to initiate a new claim for benefits alleging an onset date consistent with the deterioration. *Id.* Alternatively, although Plaintiff would argue that the July 2006 diagnosis of depression sheds "new light" on her current

---

[7]In contrast, other requests for remand are made under Sentence Four, 42 U.S.C. § 405(g)("[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing").

benefits claim, she has not supplied "good reasons" for failing to obtain this diagnosis earlier, given her long-term access to excellent medical care for a plethora of other conditions.

Because Plaintiff does not present an overwhelming case for disability, a remand for benefits is inappropriate. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). However, the ALJ's failure to properly assess and account for Plaintiff's psychological limitations taints the VE's findings and the ultimate Step Five determination, requiring a remand for further fact-finding consistent with this Report and Recommendation.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded for fact-finding and reconsideration consistent with this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: July 10, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 10, 2008.

S/Gina Wilson<br>
Judicial Assistant